**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**THOMAS W. VANES**
Crown Point, Indiana

ATTORNEY FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GEORGE P. SHERMAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ALBERTO R. MELENDEZ CRUZ, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 45A05-1203-CR-150 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Diane Ross Boswell, Judge
Cause No. 45G03-1010-MR-13

**November 30, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Alberto Melendez-Cruz appeals his conviction for murder. We affirm.

**Issue**

The sole issue before us is whether the trial court properly denied Melendez-Cruz's request to instruct the jury that it could convict him of reckless homicide as a lesser included offense of murder.

**Facts**

In the early morning hours of October 23, 2010, Christine Hernandez went to a bar in Hammond to have a drink with her half-brother, Ruben Cabello. She was not permitted to enter the bar. When Cabello exited the bar to see Hernandez, he began arguing with another man, Rito Hernandez Aldana. Several other people—including Melendez-Cruz—joined Cabello in surrounding and yelling at Aldana, and the confrontation soon became physical. The group of people began attacking Aldana, and one person threw Aldana onto the ground. While Aldana was on the ground, Hernandez saw Melendez-Cruz approach Aldana and heard him say, "You're going to die." Tr. p. 62. Melendez-Cruz then fired several shots at Aldana with a .25 caliber gun, with three of the shots striking Aldana in the head or neck, causing his death. Melendez-Cruz and the rest of the group fled the scene before police arrived. Cabello later told Melendez-Cruz that he was stupid for shooting Aldana, and Melendez-Cruz responded that he had done it because he "couldn't get a punch or a kick in." Id. at 101.

When investigating the scene, police recovered five .25 caliber shell casings in the area. They also found a nine-millimeter shell casing at the scene, but an officer testified that this casing appeared to be weathered, i.e. slightly rusted and bent, and did not appear to have been used that night. After identifying Melendez-Cruz as a suspect, police interviewed him. Melendez-Cruz admitted that he shot Aldana as many as six times with a .25 caliber handgun. The coroner identified two direct gunshot wounds to Aldana's head, a third gunshot wound to the neck that further injured Aldana's head, and two or three additional gunshot wounds to Aldana's right shoulder and arm.[1]

On October 29, 2010, the State charged Melendez-Cruz with one count of murder. During Melendez-Cruz's jury trial held on January 3-5, 2012, he requested that the jury be instructed that it had the option of convicting him of reckless homicide rather than murder. The trial court denied this request, and the jury convicted him as charged. Melendez-Cruz now appeals.

**Analysis**

Melendez-Cruz only challenges the trial court's refusal to give a lesser included offense instruction regarding reckless homicide. Trial courts must perform a three-part test when asked by a party to instruct on a lesser included offense to the charged crime. Webb v. State, 963 N.E.2d 1103, 1106 (Ind. 2012). First, by comparing the statute defining the charged crime with the statute defining the alleged lesser included offense, the court must determine if the alleged lesser included offense is inherently included in

---

[1] The coroner's findings were read into evidence as part of a joint stipulation by the parties, and it is not entirely clear whether the coroner found five or six bullet entry wounds.

the charged crime. Id. Second, if the alleged lesser included offense is not inherently included in the charged crime, then the trial court must determine whether the alleged lesser included offense is factually included in the charged crime. Id. If the alleged lesser included offense is neither inherently nor factually included in the charged crime, the trial court should not give a lesser included offense instruction. Id.

If an alleged lesser-included offense is either inherently or factually included in the charged crime, then the trial court must perform the third part of the test, which is to determine if there is a serious evidentiary dispute about the element or elements distinguishing the greater from the lesser offense and if, in light of this dispute, a jury could conclude that the lesser offense was committed but not the greater. Id. A trial court must give an instruction for an inherently or factually included offense if there is a serious evidentiary dispute. Id. By contrast, a lesser included offense instruction should not be given if there is no serious evidentiary dispute. True v. State, 954 N.E.2d 1105, 1108 (Ind. Ct. App. 2011). When the decision to give or not give a lesser included offense depends upon whether there is a serious evidentiary dispute, and the trial court has made an express finding on the existence or lack of such a dispute, we review a trial court's decision to give or refuse a lesser included offense instruction for an abuse of discretion. Id. "If a trial court makes no explicit finding regarding a serious evidentiary dispute, we review the ruling de novo." Id.

Here, there is no doubt that reckless homicide is an inherently included offense of murder because the only element distinguishing the two offenses is the lesser mens rea

4

required for reckless homicide. See Webb, 963 N.E.2d at 1106. Reckless homicide occurs when a defendant "recklessly" kills another human being, while murder requires that the killing was done "knowingly" or "intentionally." Id. (citing Ind. Code §§ 35-42-1-5 & 35-42-1-1(1)). Thus, the only question before us is whether the trial evidence establishes a serious evidentiary dispute regarding Melendez-Cruz's mens rea in the shooting of Aldana that would have supported giving a reckless homicide instruction. Additionally, in refusing to give a reckless homicide instruction the trial court expressly stated, "there's no evidence of recklessness." Tr. p. 203. This constitutes an express finding of a lack of a serious evidentiary dispute, and so we review the trial court's refusal to give a reckless homicide instruction for an abuse of discretion.

The evidence at trial firmly established that Melendez-Cruz intended Aldana's death or that he knew Aldana would die. Melendez-Cruz fired at least five, possibly six shots directly at Aldana while he lay on the ground. Even though Melendez-Cruz argues there is no evidence as to precisely how far away he was standing from Aldana when he opened fire, three of the shots struck Aldana in the head or neck, which is indicative of an intention to kill Aldana rather than the random shooting of a spray of bullets. Additionally, although there was a crowd of people standing near Aldana at the time of shooting, only Aldana was shot, which further demonstrates that Melendez-Cruz was aiming directly at Aldana rather than firing recklessly into a crowd. Despite Melendez-Cruz's argument to the contrary, there is no evidence that anyone else shot at Aldana. Police did indeed recover a nine-millimeter shell casing at the scene, but they did not

believe that shell had been used that night, based on how it was weathered. All of the other five shells recovered at the scene were .25 caliber shells, and Melendez-Cruz admitted shooting Aldana as many as six times with a .25 caliber gun. Testimony from Hernandez and Cabello implicated Melendez-Cruz as the only shooter at the scene. Indeed, neither mentioned that they saw anyone else with a firearm that night. Finally, Hernandez testified that before shooting Aldana, Melendez-Cruz said, "You're going to die." Tr. p. 62. Given this evidence, we agree with the trial court that there was no serious evidentiary dispute regarding whether Melendez-Cruz knowingly or intentionally, rather than recklessly, killed Aldana.

## Conclusion

The trial court did not abuse its discretion in finding that there was no evidence to support the giving of a reckless homicide instruction, and it therefore properly refused to give such an instruction. We affirm.

Affirmed.

BAKER, J., and RILEY, J., concur.